# IN THE COURT OF APPEALS OF IOWA

No. 16-0435
Filed February 22, 2017

**CEDAR RAPIDS,**
        Plaintiff-Appellee,

**vs.**

**MARLA MARIE LEAF,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Patrick R. Grady,

Judge.

        Marla Leaf appeals from the assessment of a civil fine imposed under

Cedar Rapids' automated traffic enforcement (ATE) ordinance.  **AFFIRMED.**

        James C. Larew of Larew Law Office, Iowa City, for appellant.

        Patricia G. Kropf of the Cedar Rapids City Attorney's Office, Cedar

Rapids, for appellee.

        Considered by Danilson, C.J., and Doyle and McDonald, JJ.

**DOYLE, Judge.**

Marla Leaf appeals from the assessment of a civil fine for violating section 61.138 of the Cedar Rapids Municipal Code, the City's automated traffic enforcement (ATE) ordinance. She asserts the City failed to prove by clear, satisfactory, and convincing evidence that her car exceeded the speed limit, and she argues the ATE ordinance and its implementation by the City violates her constitutional rights and violates state law. We affirm.

### I. Background Facts and Procedural History.

Marla Leaf received an ATE Notice of Violation alleging a speed camera captured her car traveling at a speed above the posted limit. Specifically, the Notice alleged that at 1:59 p.m. on February 5, 2015, an automated speed camera clocked Leaf's Ford Mustang traveling sixty-eight miles per hour in a fifty-five mile-per-hour zone on Interstate 380 (I-380) southbound at J Avenue in the city of Cedar Rapids. The Notice informed Leaf that:

> Under Ordinance 61.138.C.2 of the Municipal Code of the City of Cedar Rapids, Iowa, the owner of the motor vehicle is liable for payment of a civil penalty if the owner's vehicle enters an intersection or other location within the city against a speed enforcement system traveling at a speed above the posted limit.

The Notice requested payment of a civil fine in the amount of $75.

Leaf contested the violation. After a telephonic administrative hearing, the hearing officer sustained the citation and found Leaf liable for the $75 civil fine. Leaf then exercised her right to contest the Notice of Violation in court by requesting the City to file a municipal infraction against her. The City obliged.

On May 26, 2015, a non-jury trial was held before a magistrate. Shortly before trial was to begin, Leaf filed a motion to dismiss the municipal infraction

contending, among other things, that the City's use of ATE technologies violated Iowa Department of Transportation (IDOT) regulations and orders and therefore violated her federal and state due process rights, and violated her rights under the Equal Protection Clause of the United States Constitution and the Privileges and Immunities Clause of the Iowa Constitution, and violated Iowa law governing the prosecution of civil infractions. The City was allowed to respond post-trial. In his ruling, the magistrate found:

> The city's complaint alleges that on February 5, 2015, at 1:59 p.m., Ms. Leaf violated Cedar Rapids Municipal Code § 61.138(c)(2) by being the registered owner of a vehicle that exceeded the posted speed limit on I-380 southbound at J Avenue. In support, the city introduced testimony as to the automated traffic enforcement (ATE) program, the paperwork it generates when it believes a violation has occurred, and the workings of the speed cameras that are in place on I-380 in Cedar Rapids. The city alleged that Ms. Leaf's vehicle was traveling at 68 miles per hour in a 55 miles per hour zone on February 5th. The witnesses testified as to how individual cases are handled and reviewed as well as Ms. Leaf's case. They also testified as to the testing that goes on to determine whether the camera system is properly calibrated and the safeguards which are in place to ensure the system is functioning accurately. The witnesses also produced photographs showing the vehicle in question. Ms. Leaf admitted she was driving her vehicle southbound on I-380 at the location, on the date, and at the time in question.
>
> Ms. Leaf denies she was driving fast enough to trigger the cameras (12 mph or more over the posted speed limit). She testified that the roads were somewhat slippery that day and that she believed she was driving below the posted speed limit. She is essentially arguing that the ATE system was not properly functioning that day. Ms. Leaf argues the city has failed to prove by clear, satisfactory, and convincing evidence that a violation occurred.

The magistrate concluded:

> Based on the testimony and the exhibits, the court finds that the city has proven by clear, satisfactory, and convincing evidence that Ms. Leaf violated the Municipal Code as alleged in the complaint. The camera in question had been tested by GATSO (the company with

whom the city contracted to install and maintain the ATE system) to confirm it was properly calibrated within the twelve months prior to this incident. In addition, the cameras are tested at least quarterly by local law enforcement officials. In the testing that the Cedar Rapids Police perform, they place a GPS speed sensor box in the back window of a squad car that displays how fast the vehicle is travelling. The digital read-out from this display is visible in the photographs taken by the cameras. The officer drives through the camera areas fast enough to trigger the cameras. The city and GATSO are then able to confirm that the reading from the camera corresponds to the read-out that is visible in the photograph of the back of the squad car as well as the officer's speedometer. The city met its burden of proving that the camera in question was functioning properly.

The magistrate rejected all of Leaf's constitutional arguments. Leaf was assessed with a civil penalty of $75 and court costs. Pursuant to Iowa Code section 344.22(11) (2015), Leaf appealed to the district court challenging the magistrate's findings of fact and conclusions of law, and also the constitutionality of the City's ATE ordinance.

Both parties filed extensive briefs with the district court and the appeal was heard without further evidence. *See* Iowa Code § 631.13(4). The district court reviewed the record de novo. *See Sunset Mobile Home Park v. Parsons*, 324 N.W.2d 452, 454 (Iowa 1982). Like the magistrate, the district court found the City proved by clear, satisfactory, and convincing evidence that on February 5, 2015, Leaf violated section 61.138(c)(2) of the ordinance. The court also rejected Leaf's arguments that the ATE ordinance is unconstitutional both facially and as applied. The district court affirmed the magistrate's ruling and denied Leaf's request for relief on judicial review.

Leaf then filed an application for discretionary review with the Iowa Supreme Court. *See* Iowa Code § 631.16; Iowa Rs. App. P. 6.105, .106. The supreme court granted the application and transferred the appeal to this court.

## II. Standard of Review.

Our standard of review is correction of errors at law. *De Stefano v. Apts. Downtown, Inc.*, 879 N.W.2d 155, 164 (Iowa 2016) ("In a discretionary review of a small claims action, the nature of the case determines the standard of review."). Our review of small claims actions tried at law is for correction of errors at law. *Id.* We are bound by the trial court's findings of fact so long as they are supported by substantial evidence in the record. *Smith v. State*, 845 N.W.2d 51, 53 (Iowa 2014).

## III. Discussion.

### A. Cedar Rapids Municipal Code section 61.138.[1]

The district court set forth a succinct description of the operation of the ATE ordinance:

> The City of Cedar Rapids has enacted Municipal Code § 61.138—an Automated Traffic Enforcement ordinance ("ATE ordinance"). The ATE ordinance covers both redlights and speed cameras placed over stretches of historically dangerous roads in

---

[1] A printed or electronic copy of the ordinance at issue is not in the record before us. *See* Iowa R. App. P. 6.801. The magistrate took judicial notice of the Cedar Rapids Municipal Code. *See* Iowa Code § 622.62(1) ("When properly pleaded, the courts of this state shall take judicial notice of ordinances contained in a city code or city code supplement."). The ordinance in question is available electronically. *See* Cedar Rapids, IA., Mun. Code § 61.138 (2016), https://www.municode.com/library/ia/cedar_rapids/codes/code_of_ordinances?nodeId=CH61TRRE_61.138AUTREN.

The Notice of Violation issued to motor vehicle owners indicates the owner may view the city ordinance at http://www.viewcitation.com; however, to access information concerning the alleged violation and the city ordinance from this website, the owner must enter the citation number and PIN provided in the Notice.

Cedar Rapids. The purpose of the ATE ordinance is to enforce traffic regulations on dangerous roads and intersections with the hope of improving highway traffic safety.

Municipal Code § 61.138 sets forth that a contractor will be used to provide equipment or services in connection with the ATE ordinance. GATSO, a private company, agreed to pay for the installation of the cameras, maintain the cameras, and pass along to the Cedar Rapids Police Department ("CRPD") what GATSO believes to be violations of traffic laws. In exchange for the work and resources that GATSO provides, it receives $25.00 for each violation and the City keeps the remainder. After CRPD officers receive possible violations from GATSO, officers make the final determination of whether to issue a notice of violation.

After the officers decide to issue a notice of violation—which contains the ATE ordinance number and the date and time of the alleged violation—that notice is sent to the registered owner of the vehicle by certified mail. After the registered owner receives the notice, he may pay the fine or contest the citation.

Municipal Code § 61.138 provides that an owner who wishes to contest the citation shall submit a form to the City to request an administrative hearing to be held at the CRPD before an administrative appeals board. After the hearing, the board may either uphold or dismiss the citation.

Municipal Code § 61.138 also provides that a vehicle owner may request that the City file a municipal infraction in lieu of requesting a hearing before an administrative appeals board. After the City files a municipal infraction, the citation will be filed with the Small Claims Division of the Iowa District Court in Linn County. Thereafter, the vehicle owner can have her day in court and present evidence in support of her case before a judge.[2]

### B. Proof of Violation.

On appeal Leaf claims the district court erred in holding that the City had proven Leaf's ATE violation by clear, satisfactory, and convincing evidence. In finding that the City proved by clear, satisfactory, and convincing evidence that

---

[2] Another excellent detailed description of the procedures to be followed after issuance of a notice of violation is included in *Hughes v. City of Cedar Rapids*, 112 F. Supp. 3d 817, 826-27 (N.D. Iowa 2015), *affirmed in part and reversed in part*, *Hughes v. City of Cedar Rapids*, 840 Fd.3d 987, 998 (8th Cir. 2016).

on February 5, 2015, Leaf violated section 61.138(c)(2) of the ordinance, the district court stated:

> As to the first requirement under Section 61.138(c)(2), Ms. Leaf admits that she is the owner of the vehicle in the image captured by the ATE equipment. As to the second requirement, the Court finds that Ms. Leaf's vehicle was traveling in excess of the posted speed limit. CRPD Officer Mark Asplund testified that GATSO calibrates the ATE radars annually. There is evidence that the ATE equipment was last calibrated on June 25, 2014 by GATSO technician Robert Ortega. These testimonies and exhibits lead the Court to the conclusion that the equipment was working properly and an accurate speed of the Ms. Leaf's car was measured. Although Ms. Leaf testified that she was not exceeding the fifty-five mile per hour speed limit, the Court finds the City has proven by clear, satisfactory, and convincing evidence that the Defendant's vehicle was traveling in excess of the posted speed limit. (Internal citations to the record are omitted).

Although we do not doubt the sincerity of Leaf's belief she was not speeding, upon our review, we find no error on the part of the district court. But that does not end our analysis.

On appeal, Leaf challenges the ATE ordinance on various grounds, claiming the City's ATE system is unconstitutional under the Equal Protection, Privileges and Immunities, and Due Process clauses of the Iowa Constitution; and is in violation of and preempted by Iowa law; and constitutes an unlawful delegation of police power. "Constitutional claims are reviewed de novo." *City of Sioux City v. Jacobsma*, 862 N.W.2d 335, 339 (Iowa 2015). In interpreting provisions of the Iowa Constitution, we may find federal authority persuasive, although it is not binding. *See State v. Sweet*, 879 N.W.2d 811, 832 (Iowa 2016).

### C. Procedural Due Process.

Leaf argues her procedural due process rights under the Iowa Constitution were violated because the statutorily-required process was not followed. Iowa

Code section 364.22(6) mandates municipal infractions "*shall* be tried before a magistrate, a district associate judge, or a district judge in the same manner as a small claim." (Emphasis added.) A violation of Cedar Rapids Municipal Code section 61.138 constitutes a municipal infraction. *See* Cedar Rapids, Iowa, Mun. Code § 1.12 (stating "any violation of a city ordinance, city code . . . constitutes a municipal infraction"). Article I section 9 of the Iowa Constitution provides that "no person shall be deprived of life, liberty, or property, without due process of law." "Procedural due process requires that before there can be a deprivation of a protected interest, there must be notice and opportunity to be heard in a proceeding that is 'adequate to safeguard the rights for which the constitutional protection is invoked.'" *Bowers v. Polk Cty. Bd. of Supervisors*, 638 N.W.2d 682, 690-91 (Iowa 2002) (citation omitted). Leaf asserts her statutory right of direct access to the district court was unconstitutionally thwarted when she was directed by a Gatso employee to invoke the administrative process in order to contest the Notice of Violation.

On its face, the ATE ordinance specifies two different methods of contesting a Notice of Violation:

> 1. By submitting in a form specified by the City a request for an administrative hearing to be held at the [CRPD] before an administrative appeals board (the "Board") consisting of one or more impartial fact finders. Such a request must be filed within 30 days from the date on which Notice of the violation is sent to the Vehicle Owner. After a hearing, the Board may either uphold or dismiss the Automated Traffic Citation, and shall mail its written decision within 10 days after the hearing, to the address provided on the request for hearing. If the citation is upheld, then the Board shall include in its written decision a date by which the fine must be paid, and on or before that date, the Vehicle Owner shall either pay the fine or submit a request pursuant to the next paragraph, (e.)(2.).

2. By submitting in a form specified by the City a request that in lieu of the Automated Traffic Citation, a municipal infraction citation be issued and filed with the Small Claims Division of the Iowa District Court in Linn County. Such a request must be filed within 30 days from the date on which Notice of the violation is sent to the Vehicle Owner. Such a request will result in a court order requiring the Vehicle Owner to file an answer and appearance with the Clerk of Court, as well as setting the matter for trial before a judge or magistrate. If the Court finds the Vehicle Owner guilty of the municipal infraction, state mandated court costs will be added to the amount of the fine imposed by this section.

Cedar Rapids, Iowa, Mun. Code § 61.138(e).

Vehicle owners who elect the administrative process may appeal the hearing officer's decision to the courts. *See id.* Those unhappy with the magistrate's or judge's decision may then appeal to the district court. *See* Iowa Code § 364.22(11). If disappointed with the results in district court, the vehicle owner may seek discretionary review from the supreme court. *See id.* § 631.16. This is the process Leaf followed.

The administrative hearing is *optional*, not required. *See Hughes*, 112 F.Supp.3d at 847 (Stating a person may participate in an administrative hearing or proceed to court), *aff'd in part, rev'd in part*, 840 F.3d at 998 ("[T]he district court properly found that the ordinance provides two ways to contest the Notice of Violation—a legal conclusion based on the plain text of the ordinance."). In other words, a vehicle owner may bypass the administrative process altogether and go directly to court to contest the Notice of Violation.[3] Like the district court,

---

[3] It is somewhat troubling that the Notice of Violation issued to a vehicle owner is a bit misleading, as it does not, on its face, inform the owner of the two alternatives to contest the violation. The Notice states:

I CONTEST THIS VIOLATION. You have the right to contest this violation in person at an administrative hearing or by mail if you reside outside the state of Iowa.

we conclude Leaf was provided with adequate process which afforded her the opportunity to contest the ATE violation and there was no violation of her procedural due process rights because the ATE ordinance offers access to the district court before or after an optional administrative hearing. Furthermore, Leaf's due process argument has been rejected by the United States District Court for the Northern District of Iowa. *Hughes*, 112 F. Supp. 3d at 847-48.

---

> In order to state a valid defense supporting dismissal of this citation it is recommended that you review the city ordinance, the images and the actual recorded video (if applicable) of the infraction at www.viewcitation.com, before contesting your violation. If following such review, you feel that you have a valid defense against the violation you may contest at an Administrative Hearing or by mail. You may view the city ordinance at www.viewcitation.com.

The vehicle owner must review the ordinance to discover that he or she has two methods of contesting the Notice of Violation. Even then, the ordinance can reasonably be read to require an administrative hearing as a prerequisite before seeking relief in the courts, as the ordinance does not clearly indicate the methods to contest the Notice are alternative options.

Vehicle owners issued a "Findings, Decisions and Order" by an Administrative Hearing Officer are informed:

> Pursuant to City ordinance 61.138(e)(2) and the finding of liable you have the option to request that in lieu of the Automated Traffic Citation, a municipal infraction be issued and filed in the Small claims division of the Iowa district Court in Linn County.
>
> For a copy of the request form and a complete reading of 61.138 go to the City of Cedar Rapids web site: [web site address].
>
> Completed forms should be returned to the Cedar Rapids Police Department at [police department address].

Vehicle owners issued a "Notice of Determination 2nd Notice" are informed:

> Citizens may elect to resolve this Notice of Determination of Liability by paying the assessed fine or by appealing to the Small Claims Division of the Iowa District Court in Linn County. You may challenge the matter in person or by mail. Regardless of the means you choose, you must initiate action on this matter within 30 days of the date listed on the front of this notice.
> . . .
> To challenge this Notice of Determination:
> Should you choose to do so, you are entitled to appeal this Notice of Determination and to request a trial before a judge or magistrate.

### D. Substantive Due Process.

Leaf argues her substantive due process rights under the Iowa Constitution were violated based on the violation of her fundamental right to travel (both interstate and intrastate),[4] and her property right in the citation fee. Iowa Const. art. I, § 9. She also asserts "the City's violation of State law [IDOT regulations and then subsequent Evaluation and Order] offends judicial notions of fairness and human dignity." These due process arguments were raised and rejected in *Hughes*, 840 F.3d at 995-96. For the same reasons, we too reject Leaf's argument.

### E. Equal Protection.

Leaf asserts the ostensible purpose of the ATE ordinance is safety. She contends the under-inclusive enforcement of the ordinance bears no rational relationship to the interests of safety.[5] Leaf argues her Equal Protection rights under the Iowa Constitution have therefore been violated. *See* Iowa Const. art I, § 6. This argument was also raised and rejected in *Hughes*, 840 F.3d at 996-97. We likewise reject Leaf's argument.

### F. Privileges and Immunities.

For the same reasons advanced in her other constitutional arguments, Leaf claims her rights under the Privileges and Immunities Clause of the Iowa

---

[4] Our supreme court has not yet expressly recognized a fundamental right to intrastate travel under the Iowa Constitution. *See City of Panora v. Simmons*, 445 N.W.2d 363, 367-69 (Iowa 1989). But even if it were so recognized, our conclusion would remain the same.

[5] It is not disputed that the ATE system (a) captures only rear license plate images, as a result of which most semi-truck owners, whose rear license plates are not included in the Nlets database, are immune from ATE citations, and (b) does not issue Notices of Violation to certain government vehicles because their license plates are also not in the Nlets database.

Constitution were violated. *See* Iowa Const. art. I, § 6. For the same reasons we rejected her other constitutional arguments, we reject her Privileges and Immunities arguments.

### G. Unlawful Grant of Jurisdiction to an Administrative Board or Hearing Officer.

Leaf also argues the process established by the ordinance unlawfully grants jurisdiction to an administrative board or hearing officer and is preempted by Iowa Code sections 602.6101 and 364.22(4), (6). Regarding the unlawful-grant-of-jurisdiction issue, the district court held, "Municipal code § 61.138 is not an unconstitutional grant of jurisdiction to an administrative board or hearing officer." Leaf concedes "[t]he district court did not clearly address this issue." Indeed, the district court did not cite Code sections 364.22 or 602.6101 in deciding the issue. Although the issue was raised before the district court, it apparently got lost in the shuffle and was not specifically addressed in the court's ruling. Ordinarily issues must be both raised and decided by the district court before we will decide them on appeal. *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). But, there is no basis for a Rule 1.904(2) motion to amend or enlarge after the district court has determined a small claims appeal. *De Stefano*, 879 N.w.2d at 191. So, we elect to address the issue.

We note the United States District Court for the Northern District of Iowa also rejected a claim that the ordinance is preempted by Iowa Code section 602.6101:

> Contrary to Plaintiffs' assertion, the ATE system does not "tak[e] jurisdiction for traffic enforcement matters away from the Iowa District Court." Rather, the ATE system allows a person who

receives a Notice of Violation an opportunity to first object to the alleged violation at a City-sanctioned administrative hearing before proceeding to the Iowa district courts. Such a system amounts to, at most, concurrent jurisdiction over alleged municipal violations. *See Iowa v. Stueve*, [150 N.W.2d 597, 602 (Iowa 1967)] ("'Concurrent jurisdiction' . . . means that jurisdiction exercised by different courts, at the same time, over the same subject-matter, and within the same territory, and wherein litigants may, in the first instance, resort to either court indifferently.").

*Hughes*, 112 F. Supp. 3d at 849. The Eighth Circuit affirmed this holding. *See Hughes*, 840 F.3d at 998. Additionally, the Eight Circuit has also rejected drivers' claims that a similar ATE ordinance is preempted by Iowa Code sections 602.6101 and 364.22(4), (6). *Brooks v. City of Des Moines*, 844 F.3d 978, 980 (8th Cir. 2016). Finally, our supreme court rejected a claim that an ATE ordinance was preempted by Iowa Code section 364.22(5)(b) (now renumbered as § 364.22(6)(b) (2015)). *See Seymour*, 755 N.W.2d at 542.

Leaf also argues the City's ATE ordinance is further preempted by IDOT rules, as codified in Iowa Administrative Rule 761-144.6(1) and (4), and a March 2015 IDOT order.[6],[7] This is not the same song she sung to the magistrate.

---

[6] Rule 761-144.6(1) establishes requirements for placement of ATE systems, and (4) establishes calibration requirements for the system. In March 2015, the IDOT issued an evaluation of the Cedar Rapids ATE system and ruled, among other things, that certain cameras on I-380 should be moved or removed by April 17, 2015. It found that some cameras were "beyond the area of [safety] concern" or placed too close to a reduction in speed limit. The City's appeal from the IDOT order is still pending in district court. *See City of Muscatine v. Iowa Dep't of Transp.*, No. 05771 CVCV049988 (Iowa Dist. Ct. for Polk Cty. petition filed June 10, 2015). The cities of Muscatine, Cedar Rapids, and Des Moines are petitioners in this judicial review of the agency's action. A trial date is uncertain at this time. Because the City's appeal of the IDOT evaluation and order is still pending, this claim is not ripe for our review. *See Hughes*, 840 F.3d at 997 (citing *Missourians for Fiscal Accountability v. Klahr*, 830 F.3d 789 (8th Cir. 2016)).

[7] The material before the court indicates the camera's location was some 896 feet beyond a speed-limit reduction from sixty miles per hour to fifty-five miles per hour. The City contends no evidence was presented that the ATE equipment was in violation of the 1000-foot rule. The City states this information was only provided in Exhibits B and C attached to Leaf's motion to dismiss. Municipal infractions are to be tried in the same

There, she argued the City's use of ATE technologies that violate IDOT regulations and orders violated her due process rights. Preemption is not the same song Leaf sung to the district court. There, she argued "[t]he City is also violating the minimum due process requirements of the [I]DOT," referencing a regulation and the March IDOT order. In her reply brief to the district court, Leaf argued she was seeking a finding that the ATE ordinance "as imposed by the City is unconstitutional based on a variety of factors, including, but not limited to, the fact that the City itself is violating Iowa law (namely, Iowa Administrative code sections 761-144 and [I]DOT Orders.)" She was "not attempting to enforce the [IDOT] rules, she [was] merely claiming the City's failure to abide by the laws applicable to it is a violation of her [due process] constitutional rights." The district court rejected Leaf's constitutional argument. The Eighth Circuit has also rejected this constitutional argument. *Hughes*, 840 F.3d at 994-95.

Leaf abandoned her constitutional argument on appeal and, for the first time in her opening brief, argues that the "City's issuance of citations from [the location of the camera that captured Leaf's vehicle speeding] had been preempted by the IDOT's rules and subsequently, more expressly, by its express equipment-removal order, a final agency action, prior to her trial [before the magistrate.]" Leaf then fleshed out her preemption argument in her reply brief.

---

manner as a small claim. Small claim hearings are to be "simple and informal" and "without regard to technicalities of procedure." Iowa Code § 631.11(1). Motions are not permitted "unless the court in the interests of justice permits them." *Id.* § 631.7(1). Here, although the magistrate ultimately denied the motion to dismiss, the magistrate clearly permitted its filing as it granted the city additional time to respond. The same motion was also made orally at the beginning of the hearing. Even hearsay is admissible in small claims hearings if the judge finds it reliable. *GE Money Bank v. Morales*, 773 N.W.2d 533, 539 (Iowa 2009). Because the IDOT materials were not stricken or ruled inadmissible, they are a part of the record.

"Nothing is more basic in the law of appeal and error than the axiom that a party cannot sing a song to us that was not first sung in trial court." *State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999).

Even if Leaf had preserved error on this preemption claim, and if the claim was ripe for review,[8] the claim fails as a matter of law. The doctrine of conflict preemption is inapplicable here. Conflict preemption involves the question of whether *a law* promulgated by an inferior body—here a municipal ordinance—is unenforceable because it is in conflict with *a law* promulgated by a superior body—here a regulation implemented by IDOT pursuant to authority delegated by the General Assembly. *See City of Clinton v. Sheridan*, 530 N.W.2d 690, 691 (Iowa 1995) ("An ordinance is inconsistent with a law of the general assembly and, therefore, preempted by it, when the ordinance prohibits an act permitted by a statute or permits an act prohibited by a statute."); *see also* 62 C.J.S. *Municipal Corporations* § 192 ("Conflicts between regulations promulgated pursuant to properly delegated authority and ordinances are governed by the same principles governing conflicts between statutes and ordinances."). Ordinance section 61.138 does not, on its face, conflict with the IDOT regulations Leaf cites because the ordinance is silent regarding calibration and placement of the ATE speed cameras.

The conflict preemption doctrine is applicable only where the question presented is whether *the enactments* of two governments can be reconciled and given legal effect. *See Seymour*, 755 N.W.2d at 538-39 ("The theory of this branch of implied preemption is that even though an ordinance may not be

---

[8] As noted in footnote 6 above, the IDOT order is currently on appeal in the district court.

expressly preempted by the legislature, the ordinance cannot exist harmoniously with a state statute because the ordinance is diametrically in opposition to it. . . . In order to qualify for this branch of implied preemption, a local law must be 'irreconcilable' with state law."); *see also Brooks*, 844 F.3d at 980 (comparing text of ordinance to text of state law); *City of Sioux City v. Jacobsma*, 862 N.W.2d 335, 353 (Iowa 2015) ("Under Iowa's home rule amendment, a municipality cannot enact an ordinance that expressly or impliedly conflicts with state law."); *Rhoden v. City of Davenport*, 757 N.W.2d 239, 241 (Iowa 2008) (comparing text of ATE ordinance with text of statute); 62 C.J.S. *Municipal Corporations* § 192 (stating the "preemption doctrine flows from the principle that municipal legislation is invalid if it is repugnant to, or inconsistent with, state law"); 62 C.J.S. *Municipal Corporations* § 192 ("The doctrine of preemption is applied where enactments of two unequal legislative bodies are inconsistent."). The doctrine of conflict preemption is not implicated when the question presented is whether the inferior government, in exercising its executive power to enforce a particular enactment (here placement of the camera), is in violation of an enactment of a superior government (here the IDOT regulation). Consider the following hypothetical: a state law enforcement official arrests an individual for violation of a state narcotics trafficking law, but the arrest is in violation of the Fourth Amendment. Under Leaf's analysis, the state narcotics trafficking law (the legislative act) would be preempted because the arrest (the executive act) was unlawful. This is wrong. While the arrest may be unlawful, the underlying statute is not preempted. Similarly, while the placement of the speed camera may be in violation of the IDOT's regulation, the underlying ordinance is not preempted.

It is not even clear that placement of the camera is necessarily in violation of the IDOT's regulations. The regulations provide municipalities a process to appeal a regulatory decision regarding camera placement and a process to seek a waiver from the regulations. *See* Iowa Admin. Code §§ 761-144.9, 761-144.11(2). The City and the IDOT are currently in litigation/negotiation regarding whether the camera at issue can continue in its current location. Thus the legality of the placement is still an open question.

Given the foregoing, the relevant question is not whether the ordinance is preempted by the IDOT's regulations—because it clearly, concededly is not—the relevant question is whether Leaf is entitled to relief because the City placed this particular speed camera in a location contrary to the IDOT's regulation. We conclude Leaf is not entitled to any relief. First and most important, Leaf did not raise a preemption claim in the district court. Second, at the time of the speeding violation, the IDOT had not yet informed the City the camera was in a prohibited location. The IDOT's notice to the City came only after the violation at issue had been committed. Third, as noted above, the City and the IDOT are currently in litigation to resolve the issue of whether the camera at issue can continue in its current location. Fourth, and related, the creation and enforcement of the regulations regarding ATE systems is vested in the IDOT. Nowhere within this regulatory regime is there any indication an individual can sue to enforce a particular regulation against an offending municipality or that an individual is entitled to relief from the imposition of a civil penalty imposed for speeding where the evidence of such violation was obtained by use of a camera placed in a position contrary to the IDOT's regulations. *See, e.g.*, *Mueller v. Wellmark, Inc.*,

818 N.W.2d 244, 254-58 (Iowa 2012) (holding statutes regulating health insurance did not provide private right to sue); *Stotts v. Eveleth*, 688 N.W.2d 803, 808–09 (Iowa 2004) (holding Iowa Code chapter 272, intended as a regulatory measure for teacher licensing, has no implied private right to sue); *Kolbe v. State*, 625 N.W.2d 721, 727 (Iowa 2001) ("Iowa Code section 321.177(7) was intended to be a regulatory measure designed to do nothing more than simply limit the driving privileges of those who are incapable of operating a motor vehicle safely. It is devoid of any suggestion of a private remedy."); *Unertl v. Bezanson*, 414 N.W.2d 321, 325-26 (Iowa 1987) (finding no private right to sue under Iowa Code chapter 536A, regulating industrial loan companies); *Seeman v. Liberty Mut. Ins. Co.*, 322 N.W.2d 35, 41-42 (Iowa 1982) (holding chapter 507B, regulating insurance trade practices, created no private right to sue insurer).

### H. Unlawful Delegation of Police Powers.

Cedar Rapids Municipal Code section 61.138(a) explicitly provides that "[*t*]*he police department* will determine which vehicle owners are in violation of the [C]ity's traffic control ordinances and are to receive a [N]otice of [V]iolation for the offense." (Emphasis added.) Nevertheless, Leaf asserts the City has unconstitutionally delegated police powers to Gatso, a private company.

A municipality "'cannot surrender, by contract or otherwise, any of its legislative and governmental functions and powers, including a partial surrender' unless authorized by statute." *Warren Cty. Bd. of Health v. Warren Cty. Bd. of Supervisors*, 654 N.W.2d 910, 913 (Iowa 2002) (citations omitted). "It can, however, delegate its right to perform certain acts and duties necessary to

transact and carry out its powers. These delegable acts typically involve functions that require little judgment or discretion." *Id.* at 914.

In responding to Leaf's wrongful-delegation-of-police-powers assertion, the district court found:

> Ms. Leafs argument that Cedar Rapids' ATE ordinance is an unconstitutional delegation of police power to a private company is without merit. After fronting the cost for the traffic cameras, private contractor GATSO is tasked with keeping them in working order as well as forwarding perceived violations onto the CRPD. CRPD police officers Asplund and Caldwell testified at trial that it is the police department, not GATSO, that makes the ultimate decision whether to issue a notice of violation pursuant to Municipal Code § 61.138(a). The officers further testified that a large percentage of captured violations are not issued citations after officers use their judgment to determine if there were extenuating circumstances for the vehicle's excessive speed. Although it is undisputed that GATSO significantly participates with the City of Cedar Rapids regarding Section 61.138, GATSO's participation is not an unconstitutional delegation of police power. (citations to record omitted).

The Eighth Circuit reached the same conclusion. *Hughes*, 840 F.3d at 998 ("[T]here is no improper delegation (or in statutory terms, conferral) of power upon Gatso.").[9] Given that it is the Cedar Rapids Police Department, not Gatso, that determines which vehicle owners are in violation of the ATE ordinance and are to receive a notice of violation for the offense, we conclude, like the district court and Eighth Circuit, the ordinance does not unconstitutionally delegate police power.

---

[9] The *Hughes* court also noted: "Subject to later development of the law, the Iowa Supreme court has allowed ATE systems to operate with private contractors, thus implicitly rejecting the delegation challenge." 840 F.3d at 997.

### *IV. Conclusion.*

We have carefully considered all of Leaf's arguments, and any issues not specifically addressed are deemed of insufficient merit to warrant reversal. We find no error in the district court's ruling affirming the magistrate's order and denying Leaf's motion to dismiss. Accordingly, we affirm the judgment of the district court.

**AFFIRMED.**